For the Eppelant, David Heppelwhite, Gerald Goldberg, Christine McTighe for the Defendants. In this division we have 15 minutes a side but we don't look at our watches so if you're keeping it interesting you can continue to talk. I'm going to talk mostly today about one point I think where the rubber meets the road in this case and that is... Could you speak up a little bit?  I'm sorry. I'm going to talk... I think the rubber meets the road in this case in section 2.2.10 and that's what I'm going to spend most of the time talking about. There are other matters that are referenced in the brief. I will talk about them only briefly but I think this is the key issue. There are three defendants. You're applying 2.2.10 to all three? The defense to the school district would apply to the extent, to some extent, to the actions of the two individual defendants so I think they do apply to all three. There are things that also apply to the school district separately but because of the facts and the pleadings, which I'll touch on, I don't think... That's separate. But I think the central point is 2.2.10. Okay. To get us off briefly, Mr. Goldberg was a bus driver. He alleges that somebody was riding with him and said some things that were untrue. I think the allegation is without cause or justification. I reported it, repeated it to someone else and they repeated it to someone else and that's why he's here. Defense files a section 2619 motion so that makes our job a little easier. We take everything that's true that's in the complaint. We don't have to argue about questions of fact. We're here on the question of whether or not the affirmative matter that is asserted by the defendants is adequate to kick the case out even if everything that Mr. Goldberg says is true. Well, that was actually turned into a hybrid and it became 2619A9 or 87. Yes. Yeah. You're right. But I think ultimately that's where we ended up by both Judge Flanagan. I think there's not a whole lot of question that he properly... The two different lawyers in the case, I'm the third one, I'm the third one because the second lawyer for personal reasons couldn't do it. He's been overwhelmed with some things. The facts are properly pleaded. The question of whether or not the opportunity to amend should have been allowed is both a matter of law that's pretty well known but in addition to that goes to the question of whether or not the causes of action could have been sustained. I think that gets us right to where we're talking about 2210. There are two affirmative matters that are asserted. One is the Citizens Participation Act. The other is 22210. Why don't we just call it 210? It will be easier. I think the Citizens Participation Act briefly doesn't apply. The person who gets fired is the one who brings it. I also think that there wasn't an issue of the defendants exercising any particular great constitutional right. It's discussed in the brief. We can go on from there. 210, this is an issue of statutory construction. Does, in fact, this statute say what the defense says it does, and I guess what Judge Flanagan said it does, which is that you have a broad get out of jail free card because there are two provisions. The second one that says a public employee is not liable for an injury caused by the provision of information, that one is very, very broad. You can provide any information. In essence, you get the right to lie. I don't think, as a matter of statutory interpretation, which is what we're here for, that that is, in fact, a proper reading of the statute. What's your best case that it's not the proper reading of the statute? I'm just going to tell you that. Very good. What we're looking at here is there are two things that give that to you. One is the actual length, where there are two principles of statutory interpretation, and there are two things about the statute. The two principles of statutory interpretation are, number one, we all have to, you have to, I don't, you have to interpret a statute to give effect to all of its meanings. In here, we've got provision A and provision B. They're divided by the word or. It says, just so that it's fresh in our mind, the public employee acting in the scope of employment is not liable for injury caused by his negligent misrepresentation or the provision of information as described. Okay? You can't interpret a statute to say that one provision is ineffective and that the other provision covers everything. They both have to be given a meaning. The second principle is this is a statute in derogation of the common law. That's the Mulleter case. This is sovereign immunity. That was abolished. So if you have a choice between two interpretations, one of which is broad and one of which is narrow, your job is to take the side of the more conservative, the more narrow one. Those are the two principles that we apply. Now, why does the language of this tell us that? First of all, if you look at the language, caused by his negligent misrepresentation or the provision of information, going to that first principle of statutory interpretation, the provision of information, either orally in writing, by computer, et cetera, is very broad. I call it a get-out-of-jail-free card for a reason. You can provide any kind of information, reasonable, proper, misrepresentations, intentional, negligent, nonintentional, not negligent, all of that. If you interpret that to mean that this is separate from negligent misrepresentation and not modified by negligent, then you are saying provision B, the provision of information, is a big, broad one that makes provision A irrelevant because provision A is one of the things that would be included in the provision of information. Second, statutory interpretation. Well, couldn't you imagine something where it would be a misrepresentation but not just supplying information? Frankly, a lot of, right? So it's disjunctive, so it's two different alternatives, and that's under elementary school district 151 versus Schiller. So you have either or. You can't imagine a scenario where number one would not be subsumed by B, or the first phrase? How many angels can dance in the head of a pen? Could I imagine one? Yes. But in the normal definitions or the normal understanding that's given to these, which is what we use, I'm not just talking as an advocate. I'm talking as David Heppel would. The provision of information is broad. I think, yes, you could imagine a situation, but that's not what you do. What you do is say, what are the ordinary meanings? And even if you could find one out there, doesn't this, in effect, subsume the second? The other thing that backs this up is if you go and look at the history of the statute. This statute, Section 210, originally was only the negligent misrepresentation part. Two additions were made. In 1987, 86, 87, I think, Public Act 89-1431, they added or the provision of information with everything except the computer and electronic stuff. Then nine years later, they said, hey, we're in the 20th century now. You can provide information by computers and electronics, so let's toss that in there. If the legislature was going to change 210 from negligent misrepresentation to any provision of information, don't you think they would have done it differently? Don't you think they would have stricken negligent misrepresentation? Don't you think that there would have been some brouhaha down in Springfield saying, we want to give this broad protection to all public employees? Those are the two elements of statutory interpretation that are in front of us today. Now, it would be, it's tempting for me to say, I think it's a bad rule to have a get-out-of-jail-free card. It gives you a right to lie. That's not what we're here for. We're here to say, what is the statutory interpretation that applies to this? And when you look at it from the perspective of, number one, are you making the negligent misrepresentation part, A, irrelevant by interpreting it the way the defense does, I think that answers the question. Beyond that, when you see the progression of how the legislature did it, it makes sense that what they were doing was saying in 1986, when they wanted to broaden the protection for public employees, to say, we're not going to make it just for negligent misrepresentations. We're going to make it for any negligent provision of information. That's the point I want to make, and I think that's the thing that makes this case stick, and I think that's why it should be reversed. Well, the most recent case from our Supreme Court on immunity is just from a file February 25th of this year, so about a month ago, Reese v. City of Chicago, high-speed chase. I wrote it in the appellate court. While they criticized my writing style, they affirmed the bottom line, and they actually struck down Doe v. Calumet City. The only case about there that was really kind of pro-plaintiff or pro-denying of protections to cities for, frankly, some outrageous conduct. And so that then cited to dismiss, which also is a strong pro-immunity type of thing. So if we're to apply those, they have no problem. Our Supreme Court authority is saying, no, it's a get-out-of-jail-free card. That's exactly what immunity is. They're saying 210 is a get-out-of-jail-free card? It's 102. But that's an important element, because your point is well taken, that they looked at some other provision and said, we don't mind giving people a lot of immunity. That's a policy decision that's not before us today. And furthermore, I'm not prepared to sit here and say what the language was of 102. We're here today about the language of this. When you look at the language of this, this is what we have to decide. And maybe the language of 102 is different. Maybe the Supreme Court would criticize your writing style in this opinion as well if you reversed it. But I don't think what they say about 102 necessarily applies, because if that's their instinct in Springfield right now, that's fine. Our direction is not to the Supreme Court building. Our direction is to the General Assembly building. That's what the General Assembly said. The rules, you know, when you look at it from the scope of the rules, I think that's where we go. But then taking that argument, addressing that argument, the fact that they added then in 86-37 the language or provided information, the provision of information, would indicate, does it not, that they intended to modify the negligence, that they actually meant what they said, which is the first rule of statute for interpretation. They mean what they say. Often, you know, sometimes they don't understand what they say. We're stuck looking at the Oracle at Delphi, looking at sheep intestines going on. This is pretty clear, whether they intended this or not. But I was going back. We can't. I asked you about a case. Do you have a case that would support your idea on 2107 that this would be the. . . 2107 or 21010? Well, actually, it's actually. . . The ones we were just reading, it's actually 2107 is the one where it says, or for the provision of information. But I'm sure we're talking about the same thing, just the number may be different. But so what case, is there a case that would hold, interpret, or for the provision of information either orally, et cetera, as not meaning this type of case? I don't have a case, and I don't think the defense does either. Well, they said a federal case, Castillo wrote it, where they discuss it. I mean, I don't have an Illinois case. I don't think that's. . . And your point, I still think it's fair to say, you look at what the justices might think in Springfield. Okay, this is what they wrote. And if they were going to write this as, we're going to change the provision of information protection to take it out of negligence and into a get-out-of-jail-free card, I think they would have written it differently. Okay. When you have a leave to amend, what would you have amended? What would I have amended? Formally in this. . . Or would you have changed in your complaint? Oh, formally in this case, there was a complaint tendered by the second lawyer, my friend. That is what they would file. If what would I file personally, or what would the plaintiff file? What was filed. What was filed? There was a first amended complaint filed with a motion for leave, a motion to reconsideration. That motion or that complaint is found in the record at 212 through 228. That's what they sought leave. Maybe I don't understand your question. If leave were granted, what new issues. . . It seems like you're raising a new issue about a bus driver contract. Oh, in that complaint, yes. The original lawyer filed a complaint on the basis of defamation. The first amended complaint repletes defamation. It also pleads interference with a contract. So there are two general types of causes of action in that. If you want to talk about whether or not those allegations were adequately pleaded, I think that's a different question. I think they were, and I would cite generally the idea that you see in there the allegation that the subject's statements were made without cause or justification. The Code of Civil Procedure says that, you know, liberal construction of both allegations as well as the right to replete. I misspoke when I said it was Castillo's case on 107. It's actually Horvitz v. Board of Ed of VOCA, the Seventh Circuit case from 2001, where they discuss it and say, well, even if it's defamation. Quoting, we have remarked with regard to this issue that even if a statement is defamatory under Illinois law, the defendants would have immunity for the statements made within the scope of their authority. So they're kind of harsh. I think the Seventh Circuit was wrong, and maybe even more important, to me the classic Illinois case is City of Geneseo, where the court changed the regulation of public utilities. The reason was that there was an argument made previous to that in a case that was not made before the court in City of Geneseo. I don't think in the Seventh Circuit they made the argument that I'm making to you today. If they did, it would be persuasive authority and you're free to adopt it. But I think more important, I don't think the lawyers in front of the Seventh Circuit said what I said, but look at this language of the statute, look at this legislative history. They weren't deciding the same thing you're presented with today. Okay? See, it's time for reply. Thank you. Ms. McTeague. May it please the Court. Good morning, Your Honors. My name is Christine McTeague, and I represent the defendants. There's been discussion today of Section 210 of the Tort Immunity Act. Obviously, if there are questions about any other issues raised in the brief, I'd be happy to try to answer them. The plaintiff's argument seems to me to be that, first of all, I'd like to address a question by Justice Murphy. The immunity provided in Section 210 only applies to Ms. Brooks and Ms. Bradley. The school district is protected by other immunities, and that would be specifically, the most specific one is 2-107, that the school district is not liable for any acts of its employees that are defamatory. So the immunity of 2-10, which was the basis of the plaintiff's argument, is only applicable to the two individual defendants. The argument of the plaintiff seems to be that this immunity that the legislature provided is somehow too broad. As Justice Quinn, I think you noted, immunities are broad. They're designed to be broad, and they encompass a large range of activity by governmental employees for which those employees are immune. The interpretation of 2-10 in this case, if we're going to talk about statutory construction, which I think is what it boils down to, is this word or. The word or, which is between the phrase negligent misrepresentation or the provision of information. Now, there's no case that I could find supporting either side interpreting the use of the word or in Section 210. The Illinois Supreme Court, in a case called DeSmet, which dealt with a different immunity, however, dealt with an immunity that contained the word or in separate instances, dividing separate parts of the immunity. And the Illinois Supreme Court said, and we cited this case in our brief, the use of this word or separates the different immunities, and they each stand on their own. So here in this case, we have the immunity provided to the teacher and the principle about providing information. There's no question that these two individuals were acting within the scope of their duty when they reported the incidents with the bus driver. There's no question that these two individuals were providing information about the bus driver. And so if we're going to just use rules of statutory construction, the terms of Section 210 are met. And I think that's the end of the discussion. I'm not sure why the legislature did not take out the phrase negligent misrepresentation. I have reviewed the legislative history. I hate to say it is unenlightening. There is very little mention made of this statute. But I don't even think we have to go there, because I think if the terms of the statute are unambiguous, that's what we look at, that's what the court looks at, and the terms of 210 are met. Just as Quinn mentioned, the Horwitz decision, that is a case out of the Seventh Circuit. We cited that case, however, in a different part of our brief, which discusses common law immunities, that these defendants have immunities which are separate from Section 210. So leaving Section 210 aside, there are still two separate common law immunities, or actually there are three. The first one is there's an absolute immunity if a governmental employee makes a statement within the scope of his duties. And that's what the Horwitz case says. We're not just relying, however, on a case from the Seventh Circuit. There are Illinois cases that say the same thing. So leaving aside Section 210, Ms. Brooks and Ms. Bradley had a common law immunity, common law privilege, excuse me, for these statements made about the plaintiff. That's in addition to the two others, which is truth is a defense. The defense submitted the affidavits of Ms. Brooks and Ms. Bradley in connection with our motion. Those affidavits trump whatever's contained in the complaint. Those affidavits indicate that their statements were true, and that under the common law defamation is a complete defense. So you're saying it's absolute immunity? We're saying it is absolute immunity. Absolute privilege, I should say. Any school district type case on that issue? Other than the Horwitz case, no. And that's the Seventh Circuit case. And that is the only one I could find involving a school district in the scope of this type of privilege. I don't know if the Court wants to talk about the anti-SLAPP statute at all. Judge Flanagan did not rely on that in reaching her ruling. However, we believe it is applicable. I realize there were anti-SLAPP cases coming down fast and furious at the end of last year, which we cited in our brief, and I'm happy to address them if the Court has any questions about them. They didn't argue it, so there would be no need to address them. All right. In that case, if there are no further questions. Thank you, Mr. McTighe. Thank you. Mr. Halpelwhite, briefly. It's hard for me to have a short brief, and I'll try to keep it that way. There's no question. Her first point about the use of or as a disjunctive, and I can think of several English teachers in my junior high who would be pleased I remembered it. Yes, there's no question that it's a disjunctive, but there's negligent modified misrepresentation and provision of information. When she said, I don't know why the legislature didn't take out negligent misrepresentation, I think that's evidence to you and to me that the fact that it wasn't taken out raises a question about whether or not the legislature intended to create this Section 210 as a broad statute. Remember, you know, we have a choice between a broad and a narrow one because it's in derogation of the common law. We take the narrow one. We also have the issue of whether or not you're going to make one provision irrelevant by doing another. Oh, sorry. No, no, you finish your thought. No, I was going on to the third and the last point. The third and the last point is I just think she's wrong about a point of procedure. This is a 2619 motion. Everything that's in the complaint is true. You're barred from presenting evidence to contradict the complaint in the 2619 motion. I mean, I remember looking at it and, you know, King v. City of Chicago, 1st District, 324 ALF 3rd, 856 at 859. No, that doesn't trump it. We're here today on the basis of a complaint. They chose to file a 2619 rather than a motion for summary judgment. Everything in front that Mr. Goldberg says is true. We're not here with any of this, hey, our affidavits trump that. That's not the way 2619 works. And when you start from that premise, you can't dismiss all of that stuff. You can't dismiss this complaint on those bases. It brings us right back to 210, where the rubber meets the road, and right back to you. What do those words mean? What did the legislature intend, and how do you interpret them? The trial court here ruled that it was a matter of the alleged activity against the two employees or the three in the school year, based on immunity as opposed to common law privilege. Would that be correct? Yes. Thank you very much. Thank you for stepping up, Mr. Epelwhite. Now, it's hard to do when you don't write the brief, and thank you for the fine briefs and the oral argument. This case will be taken under advisement and this court will be adjourned.